# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

Gerald I. Smith Jr.　　　　　　　　　　Civ. Action No. 18-1415

　　　　　　　　　　　　　　　　　　　　**COMPLAINT**
-against-　　　　　　　　　　　　　　　(Pro Se)
　　　　　　　　　　　　　　　　　　　　Jury Demand?
　　　　　　　　　　　　　　　　　　　　Yes ☐　No ☐

Sean M. Lynn
The Law Offices of Sean M. Lynn, P.A.

## I.　PARTIES IN THIS COMPLAINT

**Plaintiff**　　　　Gerald I. Smith Jr.
　　　　　　　　　207 Stonegate Blvd
　　　　　　　　　Elkton, MD
　　　　　　　　　302 505 0511　　zaharsdaddy@hotmail.com

**Defendant(s)**

Defendant 1:　　Sean M. Lynn, Esq. (Individual)
　　　　　　　　308 S. State St.
　　　　　　　　Dover, DE 19901
　　　　　　　　302 734 2000　　seanmlynnesq@yahoo.com

Defendant 2:　　The Law Offices of Sean M. Lynn, P.A. (Corporation)
　　　　　　　　308 S. State St.
　　　　　　　　Dover, DE 19901
　　　　　　　　302 535 2072　　sean@seanlynnlaw.com

## II.　BASIS FOR JURISDICTION

☐ **U.S. Government Defendant:** United States or a federal official or agency is a defendant.

☒ **Diversity of Citizenship:** A matter between individual or corporate citizens of different states and the amount in controversy exceeds $75,000.

☒ **Federal Question:** Claim arises under the Constitution, laws or treaties of the United States.

Jurisdiction is proper due to Plaintiff Gerald I. Smith Jr. being a resident of Maryland and the Defendant Sean M. Lynn being a resident of Delaware. The second Defendant is The Law Offices of Sean M. Lynn, P.A. which is incorporated under the laws of the state of Delaware with the principal place of business being Dover, Delaware. Also jurisdiction is proper due to the numerous federal statutes at issue to include 18 U.S.C. § 1001 (fraudulent statements), 18 U.S.C. § 1519 (submitting a false document with intent to obstruct & influence an investigation), 18 U.S.C. § 1513 (Retaliating against a witness, victim, or an informant), 18 U.S.C. § 1512 (tampering with a witness, victim or informant), 18 U.S.C. § 371 (conspiracy to violate provisions of federal law), 18 U.S.C. § 1621 (Perjury), 18 U.S.C. § 1509 (obstruction of court order), 18 U.S.C. § 241 (Conspiracy against rights) and 18 U.S.C. § 245 (Federally Protected Activities). Additionally the amount in controversy exceeds $75,000.

### III.   VENUE

Venue is proper under 28 U.S.C. § 1391 due to the Defendants residing and being incorporated in the state of Delaware. Additionally all of the events that occurred took place in Kent County, Dover, Delaware. Also if the venue were in state court Kent County, Dover, Delaware the Defendant who is a Delaware State Representative for the 31st District would have an unfair advantage due to the court and the jury pool being in the district he represents.

### IV.   STATEMENT OF CLAIM

Place(s) of occurrence:  Kent County Dover, Delaware
Dates(s) of occurrence:  Numerous actions from 2016 thru 2018

**FACTS:**

1.  The Plaintiff attempted a good faith resolution on this matter by sending the Defendant the attached May 9, 2018 memo (**Exhibit A**). The Defendant failed to respond to the Plaintiff's memo therefore the Plaintiff filed a complaint with the Office of Disciplinary Counsel on September 4, 2018 (**Exhibit B**). The two memos (**Exhibit A and B**) provide a detailed summary of the professional malpractice, intentional negligence and the intentional infliction of emotional distress caused by the Defendant.

2.  The Defendant in conjunction with his client intentionally harmed the Plaintiff by submitting numerous false and harassing motions to Kent County family court beginning on March 7, 2016. The false and harassing motions were in violation of Rule 11 of the Federal Rules of Civil Procedure which states motions to the court shall not be "presented for any improper purpose, such as to harass". The false and harassing motions which included fraudulent statements (violation of 18 U.S.C. § 1001) were intentionally planned to give the Defendant's client an advantage in custody, property and child support. Additionally the motions were intentionally used to discredit the Plaintiff's federal government military whistleblower complaints which were under consideration by both the Air Force Board for Correction of Military Records and the International Criminal Court. The intentional discrediting of the Plaintiff's federal government whistleblower complaints was a violation of 18 U.S.C. § 1519 (submitting a false document with intent to obstruct & influence an investigation) and a violation of 18 U.S.C. § 1513 (Retaliating against a witness, victim, or an informant).

3. The Defendant and his client both knew the Plaintiff's federal gov't whistleblower complaints were pending and intentionally failed to disclose this evidence in the March 7, 2016 Motion and Affidavit for Emergency Ex Parte Order. The concealment of the Plaintiff's pending complaints was an intentional exclusion of evidence and a violation of 18 U.S.C. § 1519. Per the American Bar Association and the Delaware Judges' Code of Judicial Conduct Rule 2.9 "A judge, except as authorized by law, should neither initiate nor consider ex parte or other communication concerning a pending or impending proceeding". The concealment of evidence and the failure to provide a tribunal with all the facts in an ex parte proceeding led to the Petitioner being unjustly removed from his home on March 7, 2016, not seeing his children for 5 months, living in a homeless shelter for Veterans, incurring substantial debt (**Exhibit A**) and harm to reputation which greatly affected the Plaintiff's chances of returning to the military.

4. Both the Defendant and his client knew the Plaintiff was medically cleared by both the Army and Dover Behavioral Health and intentionally harmed the Plaintiff by excluding this critical evidence in the Motion and Affidavit for Emergency Ex Parte Order. The intentional exclusion of evidence was a violation of 18 U.S.C. § 1519. Due to no abuse mentioned in the Defendant's July 17, 2015 Petition for Divorce and due to the Defendant asking for joint custody in a September 25, 2015 motion it is evident that the Motion and Affidavit for Emergency Ex Parte Order which was personally given by the Defendant to the Plaintiff on March 7, 2016 (just minutes before the original custody hearing) was a malicious legal tactic (improper purpose) used by the Defendant to give his client an unfair legal advantage for custody, property and child support.

5. The Defendant assisted his client with falsely testifying both in the March 7, 2016 Motion and Affidavit for Emergency Ex Parte Order and at the April 12, 2016 Emergency PFA hearing. The tampering with a witness was in violation of 18 U.S.C. § 1512. Also the Defendant violated 18 U.S.C. § 371 by conspiring with is client to commit a criminal and fraudulent act. At the PFA hearing, the Defendant intentionally objected to the questioning of his client regarding the perjury due to having advanced knowledge that his client was committing perjury. The advanced knowledge proves the Defendant was assisting his client in committing a criminal and fraudulent act. Due to the many other family court conspired actions which are detailed in **Exhibit B** it is evident that others were involved in the conspired actions taken against the Plaintiff to include intentionally not being allowed the basic Constitutional right of cross examination of a witness.

6. Due to the perjury and the Emergency PFA obviously being used as a malicious legal tactic, the Plaintiff at a later hearing (September 15, 2018 custody hearing) asked the Defendant's client whose idea was the Emergency PFA. Unfortunately after the Plaintiff asked this critical question Judge James G. McGiffin Jr. did everything possible to interfere with the question. After much argument over the importance and relevance of the question the Defendant's client finally answered "I don't remember whose idea was it". Based on the intentional obstruction of justice from Judge McGiffin it was obvious family court was continuing to conspire with the Defendant and his client in order to cover-up and retaliate for the past complaints made by the Plaintiff against family court which are detailed in **Exhibit B**. Due to the Defendant's client committing

perjury in the Emergency PFA, the Defendant's intentional objection to the questioning of that perjury and then the later discovery that the Emergency PFA was not the client's idea it then becomes even more evident that the Defendant intentionally tampered with a witness and conspired with his client to commit a criminal and fraudulent. The Emergency PFA was used by the Defendant as a malicious legal tactic which caused an intentional infliction of emotional distress to the Plaintiff and his family.

7.  The Defendant's false personal statements in the March 7, 2016 Motion and Affidavit for Emergency Ex Parte Order intentionally harmed the Petitioner. The false statement "Petitioner and her children have suffered years of abuse by Respondent as a result of his mental health struggles and his ongoing paranoid delusions of persecution and religious prophecy and visions" contradicted the Defendant's client's actions and also contradicted the Plaintiff's medical records which were intentionally excluded. The Plaintiff never had any "mental health struggles" and never had any "ongoing paranoid delusions of persecution" or "religious prophecy". These were reckless and gross false statements made by the Defendant which were intentionally used to discredit the Plaintiff in order to justify the Emergency PFA. Additionally the false statements contradicted the Defendant client's actions which included telling the Plaintiff on December 17, 2015 to promote his website and agreeing in 2015 for the Plaintiff to use his retirement funds to hire renowned law Professor Robert Blakey who agreed to assist the Plaintiff with his complaints and federal lawsuit. Another false statement made by the Defendant in the March 7, 2016 Motion and Affidavit for Emergency Ex Parte Order was falsely accusing the Plaintiff of becoming radicalized. At the Emergency PFA hearing no evidence was

presented that the Plaintiff was becoming radicalized which is what led the Defendant to withdraw this false allegation at the Emergency PFA hearing.

8.     Further evidence of the illegal actions and continued cover-up by both the Defendant and family court are detailed in the attached January 2, 2018 Delaware Supreme Court Custody Opening Brief (**Exhibit B**) and April 30, 2018 Delaware Supreme Court Custody Reply Brief (**Exhibit B**). Per the attached January 2, 2018 Delaware Supreme Court Custody Opening Brief (**Exhibit B**) the Defendant committed perjury by falsely stating "it was my understanding from the outset of today's proceedings that it was not Mr. Smith's anticipation that Ms. Hopkins actually appear". The intentional perjury with the intent to mislead a public servant in the performance of official functions was in violation of federal law 18 U.S.C. § 1621 (Perjury) and Delaware state law Title 11 Chapter 5, § 1222 (Perjury in the second degree; class F felony). Another conspired action by the Defendant was coordinating with Dr. Joseph Zingaro to "use the custody report as a tool for another false and harassing motion to family court" (**Exhibit B**). On May 4, 2017 just 2 days after Dr. Zingaro finished his report and prior to the Plaintiff receiving the report (which contained numerous false statements), the Defendant used the falsified custody report to submit a motion for "Competency Evaluation and Motion to Modify or Stay Visitation". This malicious motion was withdrawn by the Defendant after the Plaintiff submitted evidence that contradicted the false information contained in the motion. The Plaintiff in his opening custody brief (**Exhibit B**) did ask the Delaware Supreme Court to review both the May 4, 2017 "Motion for Competency Evaluation and Motion to Modify or Stay Visitation" and

May 12, 2017 response "as additional evidence and proof of the continued malicious and false motions that have been filed by the Respondent's lawyer" (**Exhibit B**).

9. Also included in the Plaintiff's custody opening brief was the Defendant's failure to obey Judge McGifffin's June 2, 2017 court order which required the Defendant to get the transcripts from a May 8, 2017 hearing regarding property division. The violation of Judge McGiffin's order was a violation of 18 U.S.C. § 1509 (obstruction of court order). Rather than get the transcripts as ordered the Defendant had a written contract already prepared which included many additional items that were not part of the property verbal agreement. After Judge McGiffin left the room, the Plaintiff was threatened by the Defendant that he and his client could sue the Plaintiff if he didn't sign the agreement. Due to the economic duress caused by the Defendant the Plaintiff did sign the agreement.

10. The Defendant also assisted his client in committing a criminal and fraudulent act due to not allowing the Plaintiff access to his home to ensure a two list method was completed prior to the Defendant's client vacating the home in July 2016. The Plaintiff sent the Defendant e-mails requesting access to the home on June 3, 2016 and on June 8, 2016. Per the Plaintiff's May 9, 2018 memo (**Exhibit A**) the July 17, 2015 Petition for Divorce stated each party was prohibited by statute (13 Del. C, Section 1509) from transferring property. The Defendant refused to comply with state law and the court order and instead sent an e-mail on June 4, 2016 stating "If we can resolve the property division case in its entirety and draft a stipulation that addresses the division of furniture as well as all other marital property". Due to the Defendant knowing that his client was not complying with the two list method and at the same time not allowing the Plaintiff

access to the home the Defendant was assisting his client in committing a criminal and fraudulent act which was a violation of 18 U.S.C. § 1509 (obstruction of court order). In addition to violating federal and state laws the Defendant violated the Delaware Lawyers' Rules of Professional Conduct Rule 3.4 *Fairness to Opposing Party and Counsel* which states a lawyer shall not "unlawfully obstruct another party's access to evidence". Due to the Defendant knowing that his client was not complying with the two list method and intentionally denying the Plaintiff access to the home to complete a household inventory, the Defendant's client was given an unfair advantage in property due to his client taking all the expensive household and furniture items. Additionally due to the two list method being violated the Plaintiff had to sleep on the floor of his apartment for over six weeks. The Plaintiff was also forced to purchase many basic household items. It was professional negligence and an intentional infliction of harm for the Defendant to not comply with federal and state law and a court order.

11.    The Defendant also caused the Plaintiff intentional financial damages by falsely arguing with Judge McGiffin not to accept a valid e-mail agreement whereas the Defendant's client agreed to pay half the home mortgage until the home was sold. After Judge McGiffin ruled in favor of the Defendant, the Plaintiff later learned from his previous lawyer that the e-mail agreement was a valid contract. The Defendant did speak with the Plaintiff's lawyer in July 2016, which was after the Plaintiff initially refused to move back into the home, therefore an agreement was later reached between the Defendant and the Plaintiff's lawyer which is what led the Plaintiff's lawyer to state the e-mail was a valid agreement. At a follow-up hearing the Plaintiff told Judge McGiffin

that his previous lawyer told him the e-mail agreement was valid but Judge McGiffin angrily responded by asking "is your lawyer here". Due to Judge McGiffin's failure to recognize the valid e-mail agreement, the Plaintiff at the follow-up hearing requested the terms of the property agreement be changed to include alimony which was denied. Other actions taken by the Defendant included the intentional negligence of refusing to assist the Plaintiff with the reimbursement of many expenses (**Exhibit A**) to include half of the 2016 escrow funds from the sale of a rental home. The harm caused by the Defendant cost the Plaintiff $2,210.94.

12. Per the Delaware Lawyers' Rules of Professional Conduct the Defendant's responsibilities include being an officer of the legal system and a public citizen having the special responsibility for the quality of justice, using the law's procedures only for legitimate purposes and not to harass or intimidate others and the requirement of honest dealings with others. The Defendant maliciously and recklessly breached his responsibilities and was therefore intentionally negligent for causing the Plaintiff significant harm.

## V. INJURIES

The state of Delaware per 10 Del. C. § 8106 allows the Plaintiff to recover for damages within a three year statute of limitations. The initial intentional harm caused by the Defendant's March 7, 2016 false and malicious Emergency PFA led to a loss of consortium with children and created a financial distress which led the Plaintiff to calling the Veterans Administration in the middle of the night crying and pleading for assistance. After being moved into a homeless shelter for Veterans the Plaintiff sought and received

counseling from the VA to deal with the severe pain of not seeing his children for 5 months, living in a homeless shelter and incurring substantial credit card debt. The long term harm caused by the Defendant included his client receiving exclusive custody of the children on October 9, 2017. Exclusive custody has led to a further loss of consortium with the Plaintiff's children. The Defendant's wanton and willful behavior intentionally interfered with the Plaintiff's application to the Air Force Board for Correction of Military Records which is a violation of 18 U.S.C. § 241 (Conspiracy against rights) and 18 U.S.C. § 245 (Federally Protected Activities). The Defendants intentional malicious actions will have a lifelong negative impact on the Plaintiff's future employment/income opportunities due to many federal government and civilian organizations not willing to hire individuals who have been found by the court to have committed an act of domestic abuse. The Defendant's reckless behavior which led to the court's decision was intentionally done to give his client an advantage in custody, property and child support. Additionally the reckless behavior was intentionally done to discredit the Plaintiff's federal government military whistleblower complaints. The Defendants intentional negligence ruined the Plaintiff's reputation and opportunity to return to the military.

## VI. RELIEF

The relief I want the court to order is:

- [x] Money damages in the amount of $10,000,000 plus any other relief the Court and jury may deem just and proper.

- [x] Other (explain below)

The Plaintiff requests compensatory, punitive and nominal damages to include lost wages, pain & suffering, intentional negligence, intentional infliction of emotional distress, harm to reputation and loss of consortium with children. The Plaintiff also requests the Court grant relief for the costs of litigation to include court fees. In the Plaintiff's May 9, 2018 good faith resolution memo (**Exhibit A**) the Plaintiff only asked the Defendant for compensatory damages. The good faith resolution did not include compensation for future wages which would have been earned if the Plaintiff returned to active duty. The Plaintiff had an outstanding 12.5 years of active duty military service and if returned to active duty the Plaintiff would be eligible to serve for an additional 15 years. Due to the Defendant's intentional negligence, which ruined the Plaintiff's reputation and opportunity to return to the military, the Plaintiff is requesting the 15 years of eligible service be included in the compensatory damages. Using the 2018 yearly salary of $115,855.20 the Plaintiff would receive $1,737,828 for an additional 15 years of service. This amount does not include retirement benefits or account for inflation. The Plaintiff is also requesting the $516,127.72 in compensatory damages listed in **Exhibit A** be reimbursed as those expenses were caused by the Defendant's intentional negligence. Other requested compensatory damages include pain & suffering, intentional negligence, intentional infliction of emotional distress, harm to reputation and loss of consortium with children. The total compensatory damages the Plaintiff is requesting is $5,000,000. To deter the Defendant and others from committing similar reckless acts the Plaintiff also requests $5,000,000 in punitive damages. The Plaintiff also requests nominal damages and any other damages the Court and jury may deem just and proper.

## VII. CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; and (3) complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

13 September 2018
Dated

Gerald Smith
Plaintiff's Signature

Smith Jr, Gerald I.
Printed Name (Last, First, MI)

207 Stonegate Blvd    Elkton           MD        21921
Address               City             State     Zip Code

302 505 0511                    zahansdaddy@hotmail.com
Telephone Number                E-mail address (if available)

*List the same information for any additional plaintiffs named. Attach additional sheets of paper as necessary.*

**Plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.**