## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

GERALD I. SMITH, JR.　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　　Plaintiff,　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　v.　　　　　　　　　　　　　:　　C.A. No. 1:18-cv-01415-CFC
　　　　　　　　　　　　　　　　　　:
SEAN M. LYNN, THE LAW OFFICES OF　　:　　Jury Trial Requested
SEAN M. LYNN, P.A.,　　　　　　　　 :
　　　　　　　　　　　　　　　　　　:
　　　　　Defendants.　　　　　　　　:

---

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF
## MOTION TO DISMISS

---

**ELZUFON AUSTIN & MONDELL, P.A.**

/s/ Gary W. Alderson
GARY W. ALDERSON #3895
300 Delaware Avenue, Suite 1700
P.O. Box 1630
Wilmington, DE 19899-1630
(302) 428-3181
*Attorneys for Defendants*

Dated: October 5, 2018

## TABLE OF CONTENTS

page

TABLE OF AUTHORITIES ....................................................................................... iii

NATURE & STAGE OF PROCEEDINGS............................................................... 1

SUMMARY OF ARGUMENTS.................................................................................. 2

STATEMENT OF FACTS ........................................................................................... 3

ARGUMENT ................................................................................................................. 11

    I.      PER RULE 12(B)(1), THIS COMPLAINT MUST BE DISMISSED
           FOR LACK OF SUBJECT MATTER JURISDICTION DUE TO
           THE LEGAL INSUFFICIENCY OF CLAIMS AGAINST DEFENDANT
           THEREIN. THOSE CLAIMS ARE "WHOLLY INSUBSTANTIAL
           AND FRIVOLOUS."........................................................................... 11

    II.    THE COMPLAINT MUST BE DISMISSED FOR PLAINTIFF'S FAILURE
           TO JOIN INDISPENSABLE PARTIES PER RULE 12(B)(7)............................. 13

    III.   THE COMPLAINT MUST BE DISMISSED FOR FAILURE TO
           STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED
           PURSUANT TO RULE 12(B)(6)......................................................... 15

        A.   The Complaint fails to properly state the elements of a claim of civil
             conspiracy ........................................................................................... 16

        B.   The necessary elements of a claim for legal malpractice do not exist.................. 17

        C.   The Complaint fails to properly state the elements of a claim for intentional
             infliction of emotional distress (IIED)................................................... 17

        D.   Plaintiff's allegations of federal law violations are void as a matter of law.......... 18

CONCLUSION.............................................................................................................. 20

**TABLE OF AUTHORITIES**

## CASES

**page**

*AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428 (Del. 2005)......................16

*Am. Capital Acquisition Partners, LLC v. LPL Holdings, Inc.*,
2014 WL 354496 (Del. Ch. Feb. 3, 2014) ........................................................................16

*Anderson v. Airco, Inc.*, 2004 WL 2827887 (Del. Super. Nov. 30, 2004).....................................16

*Arcelik A.S v. E. I. du Pont De Nemours & Co.*, 2018 WL 1401327 (D. Del. Mar. 20, 2018) .....13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................................... 15-16

*Bell v. Hood*, 327 U.S. 678 (1946)...........................................................................................2, 11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................................15

*Davis v. Abington Mem'l Hosp.*, 765 F.3d 236 (3d Cir. 2014) .......................................................15

*Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 635 F.3d 87 (3d Cir. 2011) ...........................13

*Erickson v. Pardus*, 551 U.S. 89 (2007) .......................................................................................15

*Grubbs v. Univ. of Delaware Police Dep't*, 174 F. Supp. 3d 839 (D. Del. 2016) ........................18

*Hunt ex rel. DeSombre v. State, Dep't of Safety & Homeland Sec.,*
*Div. of Delaware State Police*, 69 A.3d 360 (Del. 2013) ..................................................17

*In re Appeal of Infotechnology, Inc.*, 582 A.2d 215 (Del. 1990 .....................................................12

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997)...................................16

*Johnson v. City of Shelby, Miss.*, 135 S. Ct. 3467 (2014)...............................................................15

*Jurimex Kommerz Transit G.m.b.H. v. Case Corp.*, 201 F.R.D. 337 (D. Del. 2001)...................13

*Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406 (3d Cir. 1991) ...........................................11

*MacQueen v. Union Carbide Corp.*, 2018 WL 2729122 (D. Del. June 6, 2018)........................16

*Matas v. Green*, 171 A.2d 916 (Del. Super. 1961) .......................................................................18

*Mattern v. Hudson*, 532 A.2d 85 (Del. Super. 1987)............................................................... 17-18

*Matter of Estate of Waters*, 647 A.2d 1091 (Del. 1994)...............................................................12

*McLaughlin v. Copeland,* D. Del., 455 F.Supp. 749 (1978),
  *aff'd,* 595 F.2d 1213 (3d Cir. 1979) ...................................................................17

*Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902 (3d Cir. 1997) ................................15

*Mortensen v. First Fed. Sav. and Loan,* 549 F.2d 884 (3d Cir. 1977)...........................11

*Nami v. Fauver*, 82 F.3d 63 (3d Cir. 1996)...............................................................15

*Nicolet, Inc. v. Nutt*, 525 A.2d 146 (Del. 1987) ........................................................16

*Nutt v. A.C. & S. Co., Inc.,* 517 A.2d 690 (Del. Super. 1986) ....................................17

*Oneida Indian Nation v. County of Oneida,* 414 U.S. 661 (1974) ...............................11

*Phoenix Canada Oil Co. v. Texaco, Inc.,* 560 F.Supp. 1372 (D. Del. 1983)..................17

*Refractories Co. v. First State Ins. Co.*, 500 F.3d 306 (3d Cir. 2007).........................13

*Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405 (3d Cir. 1997) ..15

*Smith v. Knights of Columbus*, 2015 WL 4043756 (D. Del. July 1, 2015)................5-6, 13-14, 18

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) .........................................11

*Tagayun v. Stolzenberg*, 239 Fed. Appx. 708 (3d Cir. 2007) .......................................11

*Tara Scott, et al v. Vantage Corp., et al*, 2018 WL 4445104 (D. Del. Sept. 18, 2018)................11

*Tarrant v. Ramunno*, 171 A.3d 138 (Del. 2017), *rearg. denied* (2017) .........................17

*United States v. Batchelder*, 442 U.S. 114 (1979) ......................................................18

*United States v. Kossak,* 275 F. Supp. 2d 525 (D. Del. 2003),
  *aff'd,* 178 Fed. Appx. 183 (3d Cir. 2006)..........................................................12

*Wayman Fire Prot, Inc. v. Premium Fire & Sec., LLC,*
  2014 WL 897223 (Del. Ch. Mar. 5, 2014)..........................................................16

*Wyeth and Cordis Corp. v. Abbot Labs.,* 2008 WL 2036805 (D.N.J. May 8, 2008)....................11

## STATUTES                                                                       page

18 U.S.C.A. §§ 241 ...................................................................................19

18 U.S.C.A. §§ 245 ...................................................................................19

18 U.S.C.A. § 371 .....................................................................................19

18 U.S.C.A. § 1001 .................................................................................................. 18-19

18 U.S.C.A. § 1509 .................................................................................................. 18-19

18 U.S.C.A. § 1512 .................................................................................................. 18-19

18 U.S.C.A. § 1513 .................................................................................................. 18-19

18 U.S.C.A. § 1519 .................................................................................................. 18-19

18 U.S.C.A. § 1621 .................................................................................................. 18-19

42 U.S.C.A. §§ 1983 .....................................................................................................19

11 *Del. C.* § 1222 .......................................................................................................19

## **RULES** **page**

Fed. R. Civ. Proc. 12 .................................................................................1, 2, 11, 13, 15

Fed. R. Civ. Proc. 19 ...........................................................................................2, 13, 14

## **TREATISES** **page**

*Moore's Federal Practice* § 12.30[4] (3d ed. 1997).....................................................11

*Restatement 2d Torts*, § 46............................................................................................18

## **ELECTRONIC** **page**

www.humanrightssupport.com ........................................................................................4

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Gerald I. Smith, Jr. ("Plaintiff") filed this suit on September 13, 2018, alleging that Defendants Sean M. Lynn, Esquire and The Law Offices of Sean M. Lynn, P.A. ("Defendant") committed legal malpractice, "intentional negligence," intentionally inflicted emotional distress upon him, diversity jurisdiction and a federal question due to Defendant's violation of "numerous federal statutes." Plaintiff submitted 543 pages of Exhibits with his Complaint and stated in the Complaint that Ex. A, his May 9, 2018 demand letter to Defendant, and Ex. B, his Delaware Supreme Court Office of Disciplinary Counsel ("ODC") complaint against Defendant provide a detailed summary of his accusations against Defendant.[1] Plaintiff further alleged that Defendant conspired with Plaintiff's ex-wife, Olena Smith ("Olena"), the Family Court of the State of Delaware ("Family Court"), and with psychologist Joseph C. Zingaro. Ph.D. ("Dr. Zingaro"), and that Defendant and these unnamed co-conspirators acted intentionally to "discredit" his federal whistleblower complaints, ruin his reputation, and destroy his ability to return to the military.

In response to that Complaint, Defendant moves for dismissal pursuant to Rule 12(b)(1), (6), & (7) for lack of subject matter jurisdiction, for Plaintiff's failure to join indispensable parties as required by Rule 19, and for failure to state a claim upon which relief can be granted.

---

[1] Attached hereto is an Appendix that includes most of Plaintiff's exhibits and four additional documents arranged in chronological order.

## SUMMARY OF ARGUMENTS

I.      The Complaint must be dismissed for lack of subject matter jurisdiction due to the legal insufficiency of claims against Defendant therein per Rule 12(b)(1) because those claims are "wholly insubstantial and frivolous."[2]

II.     The Complaint must be dismissed for Plaintiff's failure to join indispensable parties per Rule 12(b)(7).

III.    The Complaint must be dismissed for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

A.      The Complaint fails to properly state the elements of a claim of civil conspiracy.

B.      The necessary elements of a claim for legal malpractice do not exist.

C.      The Complaint fails to properly state the elements of a claim for intentional infliction of emotional distress.

D.      Plaintiff's allegations of federal law violations are void as a matter of law.

---

[2] *Bell v. Hood,* 327 U.S. 678, 682 (1946).

## STATEMENT OF FACTS

Plaintiff's allegations arise from Defendant's representation of his former spouse, Olena, in several Delaware Family Court matters beginning in 2015. Those Family Court matters were extensively litigated including appeals to the Delaware Supreme Court[3] and an appeal to the United States Supreme Court. Plaintiff's Complaint makes it clear, however, that he considers the actions of Defendant and his unnamed co-conspirators in Family Court part of the larger conspiracy against him.

In 2011, while Plaintiff was a Major in the United States Air Force serving in Germany, his commanding officer ordered that he undergo a mental health evaluation because of Plaintiff's belief that the Air Force, the German government, "and/or hundreds of people" [were] conspiring to discredit and/or injure [him] and his "continued belief" that he was "under constant surveillance."[4] That evaluator diagnosed Plaintiff with Delusional Disorder, Persecutory Type on March 3, 2011.[5] On July 7, 2012, Plaintiff wrote to the Air Force Central Selection Board that continuous negative actions taken against him and his family began after he reported a 2008 off-base incident where he was stabbed with a sharp object. Plaintiff wrote that he sought medical attention due to harassment. Plaintiff described his belief that video cameras were aimed at his off-base home and wrote that the psychiatrist who diagnosed him as delusional did so solely upon information contained in his complaint against his commanding officer.[6]

---

[3] Another attorney in Defendant's (then) firm represented Olena on appeal of those matters to the Delaware Supreme Court.
[4] *See* A01 or Plaintiff's Exs. At p. 525.
[5] *See* A04 or Plaintiff's Exs. At p. 339. However, on April 5, 2012, Plaintiff's security clearance was reinstated (*see* A08 or Plaintiff's Exs. At p. 493), and Plaintiff was rated as "Meets Standards" on his May 16, 2012 Officer Performance Report (*see* A09 or Plaintiff's Exs. At p. 511).
[6] *See* A11 or Plaintiff's Exs. At p. 519.

By 2013, Plaintiff was serving at Dover Air Force Base. On January 19, 2013, he was admitted to Dover Behavioral Health from the air base for "further psychiatric stabilization." Plaintiff was discharged to outpatient care on January 25, 2013, after the evaluating psychiatrist noted no safety concerns were present.[7] Plaintiff was rated as "Meets Standards" on his April 15, 2013 Officer Performance Report.[8] However, on July 8, 2013, Plaintiff wrote to the Air Force Central Selection Board that he was the "victim of a military religious hate crime" that involved "several senior military leaders" including the Air Force Chief of Staff. Plaintiff also wrote that in March of 2013 a Department of Defense ("DoD") IG (Inspector General) investigator for whistleblower reprisals contacted him.[9]

On December 9, 2014, Plaintiff wrote to the "Committee Against Torture," alleging that he was the victim of a religious and political hate crime by senior civilian and military leaders. The letter stated that others, including a Catholic CIA agent, were aware of the stabbing incident when he believes he was injected with something that led to "the Catholic hallucination." The document had a long list of attachments describing his interactions with several officials and entities in regards to his complaints.[10]

A summary of Plaintiff's alleged human rights violations appears on his website at www.humanrightssupport.com, some of which are set forth here:

Air Force 9/11 Cover-up

U.S. Air Force Catholic senior leaders in conjunction with other senior government officials used former Air Force Major Gerald I. Smith Jr.'s 1989 religious event to plan and cover-up the worst tragedy in American history. Based on the timeline of events Catholics and others wanted to use Gerald's religious events as an opportunity to make 9/11 appear as a religious Biblical event. The 1989 religious event that involved Gerald was reported to the Catholic Church by Catholic individuals who were also involved in the 1989 religious [sic] event. As sickening as this may sound based on the numerous horrific

---

[7] *See* A15 or Plaintiff's Exs. At p. 274.
[8] *See* A20 or Plaintiff's Exs. At p. 334.
[9] *See* A22 or Plaintiff's Exs. At p. 529.
[10] *See* A27 or Plaintiff's Exs. At p. 464.

4

actions taken against Gerald it's obvious numerous individuals have been involved in the planning and continued execution of one of the worst plans ever conceived in U.S. history.

Individuals like President Obama and Vice President Biden knew of this plan and did their absolute best to use Gerald Smith to achieve their personal political goals. After Air Force Major (Catholic Chaplain) Michael Morris told Gerald key info related to his situation he received an assignment at the White House. Additionally General Mark Welsh (fellow Catholic parish member) who was keenly aware of Gerald's situation, was chosen as the Chief of Staff of the Air Force by President Obama in order to cover-up the events that occurred against Gerald while they were both assigned at Ramstein AB. After receiving the Chief of Staff position, General Welsh in order to continue the cover-up, chose his Vice Commander (another fellow Catholic parish member) from Ramstein AB to be the Inspector General for the entire Air Force.

…

Later in 2008 shortly after Gerald Smith was assigned to Ramstein Air Base Germany, the Air Force and others planned a needle stabbing incident against Gerald which led to religious visions --- specifically Catholic. The first religious vision occurred on Columbus Day 2008. Based on many facts the timing of this Catholic vision for this day was by no coincidence. After Gerald Smith filed complaints with the Air Force and German police he encountered many years of severe harassment. The reprisal against Gerald included many illegal cruel actions to include being improperly referred to mental health where two Air Force Catholic mental health doctors tried to declare Gerald delusional. After hiring several lawyers, Gerald was the first person in the history of the Air Force to be returned to active duty with the false diagnosis of delusional. Gerald later went to Army doctors for further evaluation where it was determined there was "no evidence of medical or psychiatric issues."

The harassment against Gerald Smith lasted until his separation from the Air Force which was on 31 March 2014. Due to the continued harassment both on the military base and in the Dover, Delaware community Gerald filed a federal lawsuit in the District of Delaware. The court documents regarding Gerald Smith's case are publicly available via the Public Access to Court Electronic Records (PACER) service. The complaint number is 15-112. Since the federal judge in Delaware did not approve Gerald's motion for change of venue and also due to the outside influence of powerful individuals like Vice President Biden who was a U.S. Senator from Delaware from 1973 to 2009, Gerald is planning to refile his federal lawsuit in Manhattan, New York district court sometime in the near future. Also due to the failure of the District of Delaware federal court to follow proper procedure Gerald asked the International Criminal Court for assistance where his case is currently under consideration.

The 2015 suit in this Court that Plaintiff references above is attached at A32. Defendants included the Knights of Columbus ("KOC"), President Obama, Vice President Biden, Attorney General Eric Holder, Secretary of Defense Chuck Hagel, and *inter alia* Julie Lavender, the

5

principal of his children's elementary school. Plaintiff alleged defendants and numerous accomplices and co-conspirators retaliated against him after he filed complaints regarding violation of his Constitutional rights, violation of federal laws, and violation of the United Nations Convention against Torture and Other Cruel, Inhumane or Degrading Treatment or Punishment ("U.N. Convention").

Most telling from that Complaint is that Plaintiff even alleged that school principal Lavender violated federal law and the U.N. Convention because she gave him wrong information regarding his child's first day of school. Finding that the "allegations are not plausible on their face and are wholly insubstantial, frivolous, fantastical or lacking in rationality, and devoid of merit," the Complaint was dismissed.[11] Per A66, Plaintiff attempted to register a complaint with United States Senate's Committee on the Judiciary over this Court's handling of that Complaint.

On August 25, 2015, Plaintiff applied for correction of his military record because of the "continued severe harassment and attempted cover-up of [his] complaints." That request was denied on December 29, 2015 as not viable.[12] Plaintiff filed his first Application for correction of his Military Record on August 25, 2105.[13]

Olena filed a Petition for divorce and Petition for the custody of their three children in 2016. She then filed a Petition for PFA Order and an Emergency Motion for *Ex Parte* Custody Order on March 7, 2016.[14] Plaintiff then filed a counter-Petition for PFA Order on March 22, 2016.[15] The Family Court Commissioner granted Olena's PFA Petition and denied Plaintiff's. Plaintiff then filed a Review of that decision, in which the Family Court judge upheld the

---

[11] *See* Order and Opinion at A52.
[12] *See* A69 or Plaintiff's Exs. At p. 285.
[13] *See* A70 or Plaintiff's Exs. At p. 286.
[14] *See* A73 or Plaintiff's Exs. At p. 118.
[15] *See* A88 or Plaintiff's Exs. At p. 133.

Commissioner's decisions.[16] The Delaware Supreme Court, who affirmed the Family Court on March 22, 2017, addressed most of the allegations Plaintiff raised in the Complaint *sub judice*.[17] Plaintiff also attempted unsuccessfully to appeal that decision to the United States Supreme Court.[18]

Meanwhile, Plaintiff continued his quest against the military, writing to Secretary of Defense Ashton Carter on April 18, 2016 that the Air Force failed to afford him "a formal hearing to address the injustices" against him. Relevant here is are statements in paragraph 3 of that document that Plaintiff's "family" had spent over $20,000 defending against the "illegal actions" taken against him and that co-workers of his spouse were involved in the harassment against him.[19] Plaintiff wrote again to Secretary Carter on January 11, 2017 alleging that the stress from the severe harassment against him had taken a toll on his family relationship and led his wife to commit perjury and numerous other negative actions against him.[20]

On April 13, 2017, Plaintiff filed a Petition for Temporary Alimony in Family Court because his "high level complaints against senior military and civilian individuals" and his inability to secure employment had caused him financial hardship.[21] Meanwhile, Plaintiff requested a complete refund of the $15,105 of fees he paid for representation in the Family Court matters.[22] The outcome of that request is unknown.

Olena filed a Motion in Family Court for a Competency Evaluation and Modification or Stay of Visitation.[23] Plaintiff's Response to that Motion is very telling as to his state of mind during

---

[16] *See* A121 or Plaintiff's Exs. At p. 102.
[17] *See* A128 or Plaintiff's Exs. At p. 38.
[18] *See* A135 & 153 or Plaintiff's Exs. At pp. 19 & 167.
[19] *See* A170 or Plaintiff's Exs. At p. 282.
[20] *See* A173 or Plaintiff's Exs. At p. 292.
[21] *See* A175 or Plaintiff's Exs. At p. 442.
[22] *See* A176 or Plaintiff's Exs. At p. 439.
[23] *See* A178 or Plaintiff's Exs. At p. 257.

the Family Court litigation that is the subject of this Complaint;[24] as is his September 8, 2017

complaint letter to Dr. Zingaro's practice, People's Place.[25] During the course of the Custody

matter before the Family Court in December of 2016, Dr. Zingaro conducted a court-ordered

Custodial Evaluation and as a result opined that:

> There is ample evidence to support that [Plaintiff] would carry a diagnosis of Delusional
> Disorder, Persecutory Type. The DSM-V defines Persecutory Type as 'The central theme
> of the delusion involves the individual's belief that he is being conspired against, cheated,
> spied on, followed, poisoned or drugged, maliciously maligned, harassed, or obstructed in
> the pursuit of long-term goals'. The original Psychiatric Evaluation also included that he
> had an Obsessive Compulsive Personality Disorder.[26]

Family Court granted exclusive custody of the Smith's three children to Olena and ordered

that Plaintiff undergo a psychiatric evaluation on October 12, 2017.[27] Plaintiff appealed that

decision to the Delaware Supreme Court, raising the same issues in that Court that he raises now

in his Complaint in this Court.[28] The Supreme Court affirmed the Family Court on August 1,

2018.[29] Plaintiff also appealed the Family Court's decision on child support, again raising those

same issues in his pleadings to the Supreme Court.[30] The matter is pending in Supreme Court.

On December 20, 2017, the U.S. Department of Justice acknowledged Plaintiff's March

23, 2017 letter to President Trump, informing Plaintiff that his complaints regarding the Delaware

Supreme Court did not "disclose a prosecutable violation of the federal criminal civil rights

statutes."[31] On February 6, 2018, the International Criminal Court at The Hague acknowledged

receipt of Plaintiff's complaints.[32] Presumably, that remains pending. On February 9, 2018, the

---

[24] *See* A202 or Plaintiff's Exs. At p. 262.
[25] *See* A211 or Plaintiff's Exs. At p. 242.
[26] *See* A183 or Plaintiff's Exs. At p. 222.
[27] *See* A213 or Plaintiff's Exs. At p. 214.
[28] *See* Briefs at A220 & 246 or Plaintiff's Exs. at pp. 187 & 346.
[29] *See* A257.
[30] *See* Briefs at A260 & 279 or Plaintiff's Exs. At pp. 385 & 444.
[31] *See* A219 or Plaintiff's Exs. At p. 376.
[32] *See* A295 or Plaintiff's Exs. At p. 374.

8

Air Force wrote to Congressman Chris Van Hollen to acknowledge his inquiry into the Air Force's review of Plaintiff's request for correction of his military records, explaining that the process takes a long time.[33] On April 16, 2018, The White House wrote to Plaintiff acknowledging his correspondence, which had been turned over to "the appropriate Federal agency for further action."[34] On April 16, 2018, the Air Force wrote to Plaintiff that his request to be returned to active duty "does not fall within the purview of the psychiatric advisor, since his discharge was due to 'twice non-Selected for Promotion' and not [a] mental health related issue." There was no recommendation in regards to his request.[35] Plaintiff emailed the president of Temple University with harassment complaints on July 31, 2018 and August 6, 2018.[36]

On May 9, 2018, Plaintiff sent Defendant a demand for "reimbursement for damages" for alleged "litigation misconduct" during the Family Court litigation. He alleged those constituted intentional infliction of emotional distress; violations of federal law, the Delaware Lawyer's Rules of Professional Conduct, his Constitutional rights, and the federal Rules of Civil Procedure; and that Defendant obstructed justice by conspiring with the psychologist who conducted a court-ordered competency evaluation (Dr. Zingaro). Plaintiff demanded damages of $516,127.72.[37] When Defendant did not respond, Plaintiff filed this suit and a Complaint with Delaware Office of Disciplinary Counsel,[38] which sets forth that Defendant's alleged misconduct was "an intentional infliction of harm in order to cover up and discredit [Plaintiff's] federal gov't military whistleblower complaints," as well as to give Defendant's client, Olena, an unfair advantage in the Family Court litigation. Plaintiff also believes that the conspiracy against him negatively affected

---

[33] *See* A297 or Plaintiff's Exs. At p. 372.
[34] *See* A299 or Plaintiff's Exs. At p. 371.
[35] *See* A300 or Plaintiff's Exs. At p. 541.
[36] *See* A303 or Plaintiff's Exs. At p. 470.
[37] *See* A304 or Plaintiff's Exs. At p. 2.
[38] *See* A308 or Plaintiff's Exs. At p. 7.

his campaign for the United States Senate in the State of Maryland. Postings on his Facebook page describe various conspiracies against his campaign by Maryland Attorney General Brian Frosh, the Maryland State Police, African Americans, and the Maryland political website *Red Maryland*.[39]

Plaintiff has now incorporated local political events into his conspiracy narrative, including the involvement of Defendant and the Delaware Family Court. In his February 15, 2018 "Memorandum to President Donald Trump," he alleged that the Family Court was complicit in the plot against him and that "the Family Court actions were obviously politically motivated to cover-up [his] military complaints."[40] Plaintiff believes that the Family Court matters in which he was a party are a "continuation of the inhuman actions taken against [him];" that the Family Court Commissioner who heard his Protection from Abuse case was "rewarded" with a judgeship "for the horrific crimes continued against [him];" and that Defendant was similarly rewarded with elective office for his role in representing Plaintiff's ex-wife.[41] Plaintiff believes that the Delaware Supreme Court is also part of this elaborate conspiracy against him, asserting that it "rubber stamped everything in favor of Family Court" and issued its decision exactly one year from the date that he filed his Petition for an Order of Protection from Abuse.  According to Plaintiff, that was not a coincidence because "that's how they send a message."[42]

---

[39] Plaintiff filed a defamation suit against the editor of *Red Maryland* in a Maryland court seeking damages in an amount in excess of $6 million, which includes what his salary would have been as a U.S. Senator.

[40] *See* A314.

[41] *See* A316. Defendant was elected to the Delaware House of Representatives in 2014 and reelected in 2016.

[42] *Id.*

## ARGUMENT

**I.    PER RULE 12(B)(1), THIS COMPLAINT MUST BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION DUE TO THE LEGAL INSUFFICIENCY OF CLAIMS AGAINST DEFENDANT THEREIN. THOSE CLAIMS ARE "WHOLLY INSUBSTANTIAL AND FRIVOLOUS."[43]**

Dismissal is warranted here per Rule 12(b)(1) on a facial challenge to jurisdiction because Plaintiff's claims are "completely devoid of merit as not to involve a federal controversy"[44] because they are "wholly insubstantial and frivolous,"[45] "insubstantial, implausible" and "foreclosed by prior decisions of this Court."[46] Once jurisdiction has been challenged the burden shifts to Plaintiff as the party asserting subject matter jurisdiction to prove its existence.[47] And "[w]hen a motion to dismiss is based on lack of subject matter jurisdiction pursuant to Rule 12(b)(1), as well as other Rule 12(b) defenses, the Court should consider the Rule 12(b)(1) challenge first because, if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses become moot and need not be addressed."[48] "Without jurisdiction the court cannot proceed at all in any cause."[49]

The gist of Plaintiff's claims against Defendant is that he engaged in behavior harmful to Plaintiff while Defendant was representing an adversarial party in litigation. As this Court held in *United States v. Kossak*, "[t]here can be no dispute that the Delaware Supreme Court alone

---

[43] *Bell v. Hood,* 327 U.S. at 682.

[44] *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1408–09 (3d Cir. 1991)(internal citations omitted). *See also Moore's Federal Practice* § 12.30[4] (3d ed. 1997).

[45] *Bell v. Hood,* 327 U.S. at 682.

[46] *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 666 (1974). *See also Mortensen v. First Fed. Sav. and Loan,* 549 F.2d 884, 891 (3d Cir. 1977).

[47] *Tara Scott, et al v. Vantage Corp., et al,* 2018 WL 4445104, at *2 (D. Del. Sept. 18, 2018).

[48] *Wyeth and Cordis Corp. v. Abbot Labs.,* 2008 WL 2036805, at *2 (D.N.J. May 8, 2008); *See also Tagayun v. Stolzenberg*, 239 Fed.Appx. 708, 710 (3d Cir. 2007) ("An actual determination must be made whether subject matter jurisdiction exists before a court may turn to the merits of the case.").

[49] *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–95 (1998).

establishes and governs the Bar."[50] *Kossak* quoted the Delaware Supreme Court's holding in *In re Appeal of Infotechnology, Inc.,* that:

> The Scope of the Rules articulate certain valid policy reasons why a non-client litigant lacks standing to enforce an alleged conflict between his opponent's counsel and a third party … Thus, it is clear that even though lawyers have substantive legal duties, which may be congruent with the requirements and objectives of the Rules, the latter provide no additional bases for the enforcement of such duties outside of the framework of disciplinary proceedings. The reasons for this, however, are not limited to the Scope. In Delaware there is the fundamental constitutional principle that this Court, alone, has sole and exclusive responsibility over all matters affecting governance of the Bar.[51]

In further support of the proposition that Plaintiff cannot bring his claims against Defendant in this Court is the Delaware Supreme Court's holding in *Matter of Estate of Waters*, which clarified the Court's "corollary holding in *Infotechnology*" that

> [A] non-client litigant *does have standing* to enforce the Delaware Rules of Professional Conduct in a trial court when they can demonstrate to the trial judge that the 'opposing counsel's conflict somehow prejudiced *his* or *her* rights' and calls into question the 'fair or efficient administration of justice.'[52]

To the extent the Complaint alleges that Defendant "somehow" prejudiced his rights during the Family Court litigation, those allegations are misplaced. Any argument Plaintiff may have that he was prohibited from asserting a violation of his rights during litigation goes to the argument below that the Delaware Family Court becomes an indispensable party. Defendant is not a state actor so Plaintiff cannot allege harm from any perceived violation of his rights by Defendant. In sum, Plaintiff properly brought his claims of misconduct against Defendant with the Delaware Office of Disciplinary Counsel, not here.

---

[50] 275 F. Supp. 2d 525, 531 (D. Del. 2003), *aff'd*, 178 Fed. Appx. 183 (3d Cir. 2006).
[51] 582 A.2d 215 (Del. 1990).
[52] 647 A.2d 1091, 1095–96 (Del. 1994)(Emphasis in original).

## II.     THE COMPLAINT MUST BE DISMISSED FOR PLAINTIFF'S FAILURE TO JOIN INDISPENSABLE PARTIES PER RULE 12(B)(7).

In the alternative, dismissal is warranted per Rule 12(b)(7) because of Plaintiff's failure to join indispensable parties as required by Rule 19. Those parties are his ex-wife Olena, Delaware Family Court, and Dr. Zingaro, all of whom Plaintiff alleges conspired with Defendant to cause him harm. All should have been named in the Complaint as all are necessary parties per Rule 19(a), because without them complete relief cannot be afforded to Defendant. Moreover they, especially Olena, are so situated that disposing of this action would be impossible, would potentially impair or impede their ability to protect their own interests, or would potentially expose them to incurring further obligations *vis-à-vis* Plaintiff.[53] Plaintiff's conscious decision not to name these indispensable parties, as well as the nature of Plaintiff's allegations, shades the balancing of the interests of Plaintiff, Defendant, those absent parties, the courts, and the public in favor of dismissal.[54]

Defendant is well aware of his burden to show why those unnamed and absent parties are indispensable.[55] However, "[w]hen making a Rule 19 determination, the Court may consider evidence outside the pleadings."[56] Defendant respectfully submits that the Court look no further in this analysis than the exhibits Plaintiff submitted with the Complaint (and those in the Appendix), especially as Plaintiff's allegations of conspiracy. Most telling, however, is the similarity of this Complaint to Plaintiff's 2015 action in this Court[57] with a notable exception.

---

[53] Rule 19(a). *See also Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007); *Arcelik A.S v. E. I. du Pont De Nemours & Co.*, 2018 WL 1401327, at *2–3 (D. Del. Mar. 20, 2018).

[54] *Id.*

[55] *Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 635 F.3d 87, 97 (3d Cir. 2011).

[56] *Jurimex Kommerz Transit G.m.b.H. v. Case Corp.*, 201 F.R.D. 337, 340 (D. Del. 2001).

[57] *Smith v. Knights of Columbus*, 2015 WL 4043756, at *1.

In his 2015 suit, Plaintiff named a number of Defendants, including the President and Vice President of the United States. There he demonstrated that he has no hesitation or compunction against suing persons who have no knowledge much less involvement in the acts or omissions that Plaintiff chooses to allege. Here, however, Plaintiff made the decision to exclude the indispensable parties hoping that their absence would preclude or at least hinder Defendant's ability to defend himself. This is especially true of his exclusion of Olena. Surely, Plaintiff appreciated when he decided to exclude her from this suit that it would place Defendant in an untenable position with his (now former) client. This is perhaps the best argument why actions against attorneys on the other side are left to disciplinary proceedings not litigation as explained further below.

Defendant respectfully submits that consideration of the Rule 19(b) factors supports dismissal. On the one hand, judgment in the absence of those parties would be inadequate and incomplete. On the other hand, forcing those parties into this suit and/or the final judgment in this matter could potentially cause irreparable harm to Olena and Dr. Zingaro. Moreover, dismissal would have no effect upon Plaintiff's ability to remedy his allegations against Defendant in the appropriate tribunal, which is the Office of Disciplinary Counsel. Plaintiff cannot offer any reasonable or plausible reason for nonjoinder of these parties because none exists.[58]

---

[58] *See* Rule 19(c).

14

### III.   THE COMPLAINT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO RULE 12(B)(6).

In the alternative, dismissal is warranted per Rule 12(b)(6) because even accepting the allegations of the Complaint as true and well-pled, which they are not, and even when viewing those allegations in the light most favorable to Plaintiff; those allegations do not "raise a claim of entitlement to relief."[59] As a *pro se* litigant, Plaintiff's Complaint must be liberally construed and "however inartfully pleaded, [and] must be held to less stringent standards than formal pleadings drafted by lawyers."[60] However, even a *pro se* Complaint must meet certain requirements: "[t]hough 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"[61] The Court need not accept as true "bald assertions,"[62] "unsupported conclusions and unwarranted inferences,"[63] or allegations that are "self-evidently false"[64] and Plaintiff must plead facts sufficient to show that a claim has "substantive plausibility."[65]

That plausibility must be found on the face of the complaint: "[a] claim has facial plausibility when the [complainant] pleads factual content that allows the court to draw the reasonable inference that the [accused] is liable for the misconduct alleged." [66] Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its

---

[59] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, (2007).

[60] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[61] *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

[62] *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted).

[63] *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997).

[64] *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

[65] *Johnson v. City of Shelby, Miss.,* 135 S. Ct. 346, 347 (2014).

[66] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

judicial experience and common sense."[67] "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[68]

### A. The Complaint fails to properly state the elements of a claim of civil conspiracy.

As explained below, Plaintiff lacks standing to allege a criminal conspiracy. Accepting that he may have pled a civil conspiracy instead, his Complaint still fails as a matter of law. The elements of a claim for civil conspiracy under Delaware law are: (1) a confederation or combination of two or more persons; (2) an unlawful act done in furtherance of the conspiracy; and (3) damages resulting from the action of the parties to the conspiracy.[69] The first element of such a claim "requires a plaintiff to establish that two or more persons combined or agreed with the intent to do an unlawful act or to do an otherwise lawful act by unlawful means."[70] A civil conspiracy "requires an agreement or understanding to commit a wrong against another ... [which] necessarily involves some mutual mental action coupled with an intent to commit the act which results in the injury."[71] However, Plaintiff has not and cannot identify sufficient record evidence to create a genuine issue of material fact as to whether such a mutual agreement or understanding actually existed especially in light of his decision not to include the alleged co-conspirators in suit as explained above.[72]

---

[67] *Id.* at 679

[68] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted).

[69] *AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 437 n.8 (Del. 2005); *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149–50 (Del. 1987); *Wayman Fire Prot, Inc. v. Premium Fire & Sec., LLC*, 2014 WL 897223, at *24 (Del. Ch. Mar. 5, 2014).

[70] *Am. Capital Acquisition Partners, LLC v. LPL Holdings, Inc.*, 2014 WL 354496, at *12 (Del. Ch. Feb. 3, 2014).

[71] *Anderson v. Airco, Inc.*, 2004 WL 2827887, at *4 (Del. Super. Nov. 30, 2004) (internal quotation marks and citations omitted).

[72] *MacQueen v. Union Carbide Corp.*, 2018 WL 2729122, at *6 (D. Del. June 6, 2018).

Moreover, civil conspiracy is not an independent cause of action in Delaware, but requires an underlying wrong, which would be actionable absent the conspiracy.[73] As set forth herein, Plaintiff cannot meet that burden, as none of his claims are actionable in this Court.

**B.      The necessary elements of a claim for legal malpractice do not exist.**

Plaintiff's claims for legal malpractice also fail as a matter of law. To state a claim for legal malpractice in Delaware, a plaintiff must allege and prove the following elements: (1) the employment of the lawyer, (2) the lawyer's neglect of a professional obligation, and (3) resulting loss.[74] Plaintiff's claim fails for the obvious reason that Plaintiff's adversary, not Plaintiff, employed Defendant.

**C.      The Complaint fails to properly state the elements of a claim for intentional infliction of emotional distress (IIED).**

This claim also fails as a matter of law because in Delaware, "[a] claim for intentional infliction of emotional distress (IIED) requires proof that [Defendant] intentionally engaged in extreme or outrageous conduct that caused severe emotional distress."[75] "Outrageous behavior is 'conduct that exceeds the bounds of decency and is regarded as intolerable in a civilized community.'"[76] If this were a case "where reasonable men might differ" as to Defendant's conduct, then it would be for the jury to determine whether that conduct had been sufficiently extreme and outrageous to result in liability.[77] However, this claim must be dismissed as it "is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so

---

[73] *Nutt v. A.C. & S. Co., Inc.,* 517 A.2d 690, 694 (Del. Super. 1986). *See also Phoenix Canada Oil Co. v. Texaco, Inc.,* 560 F.Supp. 1372, 1388 (D. Del. 1983); *McLaughlin v. Copeland,* D. Del., 455 F.Supp. 749, 752 (1978), *aff'd.,* 595 F.2d 1213 (3d Cir. 1979).

[74] *Tarrant v. Ramunno,* 171 A.3d 138 (Del. 2017), *rearg. denied* (2017).

[75] *Hunt ex rel. DeSombre v. State, Dep't of Safety & Homeland Sec., Div. of Delaware State Police,* 69 A.3d 360, 367 (Del. 2013).

[76] *Id.*

[77] *Mattern v. Hudson,* 532 A.2d 85, 85–86 (Del. Super. 1987).

extreme and outrageous as to permit recovery"[78] and this case is far from that extreme. The allegations against Defendant all arise in the context of an attorney properly litigating matters in Delaware courts, conduct that is far from the requisite for this claim:

> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.... There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam.... It is only where there is a special relation between the parties ... that there may be recovery for insults not amounting to extreme outrage.[79]

Defendant respectfully submits that even when the facts in this case are taken in a light most favorable to Plaintiff, he is entitled to prevail as a matter of law on this claim.[80]

Moreover, by clearly alleging that the conduct of Defendant and his co-conspirators was intentional, Plaintiff precluded any claim for negligent infliction of emotional distress. Plaintiff did not allege, nor does anything here support the elements of such a claim under Delaware law, which are negligent conduct that proximately caused emotional distress and that emotional distress that was accompanied by non-transitory, recurring physical phenomena.[81]

### D.       Plaintiff's allegations of federal law violations are void as a matter of law.

To the extent Plaintiff seeks to impose criminal liability upon Defendant pursuant to the federal criminal statutes upon which he relies, he lacks standing to proceed.[82] His federal criminal claims must be dismissed as these are devoid of merit.[83] None of the Title 18 sections that Plaintiff invoked pertain in this civil matter in federal court because all of those criminal statutes (18

---

[78] *Id.*
[79] Restatement 2d Torts, § 46, comment d.
[80] *Matas v. Green,* 171 A.2d 916 (Del. Super. 1961).
[81] *Grubbs v. Univ. of Delaware Police Dep't*, 174 F. Supp. 3d 839, 862 (D. Del. 2016).
[82] *See United States v. Batchelder,* 442 U.S. 114, 124 (1979). *See also* A219 or Plaintiff's Exs. At p. 376.
[83] *Smith v. Knights of Columbus,* 2015 WL 4043756, at *3–6.

U.S.C.A. §§ 1001, 1519, 1513, 1512, 1621, and 1509) pertain to matters before a court, tribunal, or agency of the United States, not the State of Delaware.

Plaintiff's invocation of 11 *Del.C.* § 1222 is also inapplicable; Defendant is an officer of the Court who does not testify. However, Plaintiff also appears to have pled subordination of perjury, which according to the notes accompanying the statute means that § 1222 would apply as against Defendant. This again implicates the problem of the indispensable but unnamed ex-wife, Olena, both to the question as to whether she perjured herself, and if so, did she do so with at least the knowledge if not the instigation of Defendant. The statute is also indicative of the fact that Plaintiff brings this charge in the wrong Court as this Court has no jurisdiction to enforce § 1222.

Moreover, his reliance upon the statutes cited is misplaced. Per 18 U.S.C.A. § 371, a "conspiracy to commit offense or to defraud the United States" requires "two or more persons conspire either to commit any offense *against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose*...." (Emphasis added). Within regard for the fact that 18 U.S.C.A. §§ 241 and 245 are criminal statutes, Plaintiff cleverly invokes those statutes as an end run to allege a violation of his civil rights; an action that would more properly be brought pursuant to 42 U.S.C.A. § 1983 if there were any conceivable factual bases for such an allegation, which there is not.

19

## CONCLUSION

The conclusion here should be the same as that in *Smith v. Knights of Columbus*:[84]

Following a thorough review of the complaint and other papers of record, the court draws on its judicial experience and common sense and finds that the allegations are not plausible on their face and are wholly insubstantial, frivolous, fantastical or lacking in rationality, and devoid of merit.

Thus, for all of the reasons set forth herein, Defendants Sean M. Lynn, Esquire and The Law Offices of Sean M. Lynn, P.A. respectfully request that their Motion be granted and that Plaintiff's Complaint be dismissed with prejudice, along with any other relief this Honorable Court deems as just or equitable under the circumstances.

<div style="margin-left: 40%;">

Respectfully submitted,

**ELZUFON AUSTIN & MONDELL, P.A.**

*/s/ Gary W. Alderson*
GARY W. ALDERSON (# 3895)
300 Delaware Avenue, Suite 1700
P.O. Box 1630
Wilmington, DE  19899-1630
(302) 428-3181
*Attorney for Defendants*

</div>

Dated: October 5, 2018

G:\Docs\CLIENT\89\30373\BRIEF\01298525.DOCX

---

[84] 2015 WL 4043756 at *6.